**Affirmed in Part and Reversed and Remanded in Part and Memorandum Opinion filed December 9, 2014.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-13-00674-CV

_____

### JONATHAN WASSERBERG, Appellant

### V.

### RES-TX ONE, LLC, Appellee

---

**On Appeal from the 80th District Court
Harris County, Texas
Trial Court Cause No. 2011-32592**

---

## MEMORANDUM OPINION

In this appeal, appellant Jonathan Wasserberg challenges the trial court's finding that a partial summary judgment awarding damages against him for breach of a guaranty agreement was made final by nonsuit of all other parties. Wasserberg also challenges the trial court's nunc pro tunc modification of its summary judgment order to state expressly that it is final, as well as the merits of the summary judgment itself. We hold that the nonsuit did not make the summary judgment order final

because a claim for statutory attorneys' fees had not been determined. Thus, the trial court retained the power to modify its judgment to make it final, but it erred in doing so without addressing the fee claim. We therefore reverse the portion of the judgment disposing of the fee claim. We conclude that the trial court did not err in granting partial summary judgment and awarding damages for breach of the guaranty agreement, however, and we affirm that portion of its judgment.

## BACKGROUND

Appellee RES-TX One, LLC, acquired a note after regulators seized Franklin Bank. Waterhill Companies Ltd. had executed that note to finance the purchase and construction of single-family homes. Wasserberg, among others, guaranteed the note.

When Watterhill did not pay the note, the secured properties were foreclosed and sold. Because the foreclosure proceeds did not satisfy the loans, RES-TX sued Waterhill, Wasserberg, and others[1] for breach of contract and sought damages, attorneys' fees, pre-and post-judgment interest, and costs.

Next, RES-TX moved for partial summary judgment that Wasserberg had breached the guaranty agreement and owed damages and attorneys' fees. RES-TX's motion did not request a specific amount of fees or attach evidence of fees incurred. The trial court granted the motion, adding "partial" to the title of its order and striking out the attorneys' fees award. The signed order provides:

> The Court, having considered Plaintiff RES-TX One, LLC's ("RESTEX") Motion for *Partial* Summary Judgment on its

---

[1] While Waterhill Companies Ltd. signed the loan, Jonathan Wasserberg, 411 Jackson Hill Partners Ltd., Jason R. Felt, and J.F.C. Development Ltd. were all guarantors. Because RES-TX nonsuited all other defendants once summary judgment was granted against Wasserberg, we need not further address the other defendants.

2

Affirmative Claims for Breach of Contract against Defendant Jonathan Wasserberg, Mr. Wasserberg's response thereto, the evidence on file, and arguments of counsel, hereby

GRANTS the motion in its entirety, and awards RES-TX $3,173,645.97 in damages. ~~The Court further awards RES-TX its attorneys' fees and costs incurred in this matter.~~[2]

Subsequently, RES-TX nonsuited all other defendants, including Waterhill and the other guarantors. The trial court signed an order of nonsuit soon thereafter. The nonsuit did not address RES-TX's attorneys' fee claim against Wasserberg, however.

RES-TX, concerned that the "partial" designation on the order might interfere with its ability to collect the judgment, filed a motion for entry of judgment asking the trial court to sign a final judgment awarding damages plus post-judgment interest and costs, but not attorneys' fees. While RES-TX waited for the submission deadline to pass, Waterhill filed an answer—even though it had been nonsuited. RES-TX moved to strike Waterhill's answer and set the motion for the entry of judgment and motion to strike for an oral hearing.

At the oral hearing on the motion for entry of judgment, the trial court announced its belief that its plenary power had expired thirty days from the date the nonsuit order was signed by the court. Thus, the trial court ended the hearing by stating that it could not take any further action.

RES-TX, still concerned about its ability to abstract the existing summary judgment order, filed a motion for judgment nunc pro tunc asking the trial court to clarify that the summary judgment was final, not partial.

---

[2] The trial court's addition is italicized; its deletions are struck through.

3

Wasserberg moved to quash the nunc pro tunc motion because claims remained outstanding and the partial summary judgment lacked the "indicia of finality." Wasserberg argued in the alternative that if the partial summary judgment was now final, then the requested modification was not a proper use of the nunc pro tunc procedure.

At a later hearing, the trial court orally denied Wasserberg's motion to quash and granted RES-TEX's motion for judgment nunc pro tunc. The trial court signed an order for judgment nunc pro tunc, finding that its partial summary judgment order now contained a clerical error and should be corrected to reflect the finality of the judgment as a result of the nonsuit. The trial court attached as Exhibit A the judgment nunc pro tunc, which purported to make the partial summary judgment final.

Wasserberg then filed a motion for new trial or to modify judgment. Wasserberg argued that the evidence failed to support entry of the judgment nunc pro tunc, that the trial court's striking out of the attorneys' fees award showed the summary judgment order was not final, and that the summary judgment order neither disposed of all claims nor contained indications of finality. Wasserberg's motion for new trial was overruled by operation of law. This appeal followed.

## ANALYSIS

Wasserberg raises three issues on appeal: (1) the summary judgment order failed to dispose of all claims against him because the order lacked finality language and deleted the award of attorneys' fees; (2) the trial court improperly signed a judgment nunc pro tunc; and (3) the trial court erred when it granted partial summary judgment because the motion had both procedural and evidentiary shortcomings.

4

After establishing that we have jurisdiction to hear this appeal, we consider these issues below.

## I. We have jurisdiction to hear an appeal from a judgment made final by its language.

We first address our jurisdiction by examining whether a final judgment exists that may be appealed. "[T]he general rule, with a few mostly statutory exceptions, is that an appeal may be taken only from a final judgment." *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). As we explain in Part II below, RES-TX's nonsuit did not make the trial court's partial summary judgment final. We hold that the judgment nunc pro tunc is final, however.

This Court has previously recognized that a final judgment is not determined by its form, but by its language and the record on appeal. *B.Z.B., Inc. v. Clark*, 273 S.W.3d 899, 902 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (citing *Lehmann* for the test of finality). To satisfy the *Lehmann* test, a judgment either must state clearly and unequivocally that it disposes of all claims and parties, or it must dispose of every pending claim and party regardless of its language. *Lehmann*, 39 S.W.3d at 200. The Supreme Court of Texas recently reiterated that language such as "all relief not granted is denied . . . does not indicate that a judgment rendered without a conventional trial is final for the purposes of appeal." *In re Daredia*, 317 S.W.3d 247, 248 (Tex. 2010) (per curiam) (citing *Lehmann*, 39 S.W.3d at 203–04). But a statement such as "This judgment finally disposes of all parties and all claims and is appealable" leaves no doubt about the court's intention to make a final disposition of the case. *Id.* (citing *Lehmann*, 39 S.W.3d at 206).

*In re Daredia* also clarified that the word "final," while less clear than "appealable," was "clear enough" to indicate a final judgment when the judgment

5

stated, "All relief not expressly granted herein is denied. This judgment disposes of all parties and all claims in this cause of action and is therefore FINAL." *Id.* at 248. Further, an order "can be final and appealable when it should not be," as when an order granting summary judgment does not address all of the plaintiff's claims, but "state[s] unequivocally that final judgment is rendered that the plaintiff take nothing by his suit." *Lehmann*, 39 S.W.3d at 204. Thus, an order's clear intent to dispose of all claims and all parties will make it final and appealable "even though it should have been interlocutory" or the parties "did not intend for the judgment to be final." *Id.* at 200, 206. Granting a final judgment that does not address all claims "makes the order reversible, but not interlocutory." *Id.* at 204.

In this case, the judgment nunc pro tunc unequivocally attempts to dispose of all remaining claims by stating "All relief requested in this case and not expressly granted is denied. This is a final judgment." While the first sentence is not, by itself, any indication of finality, the subsequent sentence clarifies the trial court's intention that the judgment be final.

In addition to the judgment language, the trial court's nunc pro tunc order explicitly details the trial court's belief that the nonsuit disposed of "all of the parties and claims remaining in the lawsuit," making the "partial summary judgment a final judgment." Specifically, the nunc pro tunc order reads:

> As a result of the December 3, 2012 nonsuit, all of the parties and claims remaining in this lawsuit were disposed either by means of the partial summary judgment granted against Wasserberg in the amount of $3,173,645.97 or the nonsuit. Therefore, on December 3, 2012, the October 16, 2012 partial summary judgment became a final judgment.

Together, the language of the order and judgment nunc pro tunc show that the trial court intended to make the partial summary judgment expressly final. We

6

therefore hold that the judgment nunc pro tunc is final and appealable even though, as explained below, it erroneously failed to address the pending claim for mandatory attorneys' fees. For a judgment to be final and appealable, *Lehmann* requires either clear and unequivocal language or disposition of every claim and party, and here the language is clear and unequivocal.

## II. The trial court erred by rendering a final judgment without addressing RES-TX's claim for attorneys' fees.

In his first and second issues, Wasserberg contends that the trial court erred in deciding that the nonsuit rendered its partial summary judgment final and in signing a judgment nunc pro tunc without addressing RES-TX's claim for attorneys' fees. We agree. To explain our conclusion, we discuss the effect of each major procedural step in the litigation beginning with the summary judgment.

Res-TX's motion for summary judgment did not dispose of its mandatory claim for attorneys' fees claim because the court struck out the attorneys' fees award. In RES-TX's original petition, it sought, *inter alia*, attorneys' fees for prosecuting its suit for breach of contract against all defendants. The trial court granted summary judgment on RES-TX's breach of contract cause of action against Wasserberg, including damages. The court denied RES-TX summary judgment as to attorneys' fees, however, by striking out the line awarding attorneys' fees. When a trial court denies summary judgment, it denies only summary judgment relief; it does not adjudicate the underlying claim. *See* Tex. R. Civ. P. 166a(e); *McNally v. Guevara*, 52 S.W.3d 195, 195–196 (Tex. 2001) (per curiam) (no presumption that a summary judgment "addresses all of the movant's claims"). Thus, by striking the attorneys' fees award from its order granting partial summary judgment, the trial court neither granted nor denied an award of fees. *In re K.M.B.*, 148 S.W.3d 618,

7

620 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *see also Youngblood & Associates, P.L.L.C. v. Duhon*, 57 S.W.3d 63, 65 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (holding failure to rule on claims for attorneys' fees prevented order from being final).

With outstanding claims and defendants remaining, RES-TX then attempted to finalize the summary judgment by nonsuiting its claims against all defendants other than Wasserberg. The nonsuit did not dispose of RES-TX's mandatory attorneys' fees claim, however, because it did not nonsuit RES-TX's claims against Wasserberg. A nonsuit may render a previously signed partial summary judgment final, but it must dispose of all remaining parties and claims.[3] Here, RES-TX nonsuited all of its claims against all defendants except its still-pending attorneys' fees claim against Wasserberg. Because RES-TX's nonsuit did not dispose of all remaining claims, it did not render the interlocutory summary judgment final or start the clock ticking on the expiration of the trial court's plenary power.

RES-TX then moved for entry of judgment and asked for damages as well as interest and costs, but did not request attorneys' fees. This motion did not dispose of RES-TX's fee claim, however, because the court never ruled on it. Similarly, Wasserberg never moved for summary judgment on RES-TX's claim for attorneys'

---

[3] *See Crites v. Collins*, 284 S.W.3d 839, 841 (Tex. 2009) (per curiam) (finding that the order denying the remaining sanctions claim made the order final); *Farmer v. Ben E. Keith Co.*, 907 S.W.2d 495, 496 (Tex. 1995) (per curiam) (holding that a severance, dismissal, or nonsuit may dispose of unadjudicated claims and parties); *Clarendon Nat. Ins. Co. v. Thompson*, 199 S.W.3d 482, 492 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (stating that the interlocutory judgment became final when the trial court signed the nonsuit); *see generally Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 718 n.1 (Tex. 2003) (Jefferson, J., concurring) (citing Elaine A. Carlson & Karlene S. Dunn, *Navigating Procedural Minefields: Nuances in Determining Finality of Judgments, Plenary Power, and Appealability*, 41 S. Tex. L. Rev. 953, 1001–08 (2000), concerning avenues to secure final judgments).

fees. Therefore, RES-TX's claim for attorneys' fees was still outstanding when the trial court signed the judgment nunc pro tunc.

Given this procedural background, Wasserberg takes the position that the judgment nunc pro tunc was erroneous because it transformed the interlocutory summary judgment into a final judgment. In support of his position, Wasserberg argues in part that a judgment nunc pro tunc may correct clerical but not judicial errors, and that making an interlocutory summary judgment final by disposing of remaining claims goes beyond correcting a clerical error. *See* Tex. R. Civ. P. 316, 329b(f); *Rawlins v. Rawlins*, 324 S.W.3d 852, 855 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (explaining that judgment nunc pro tunc can only correct written judgment incorrectly stating the judgment actually rendered). As we have explained above, however, the nonsuit did not make the partial summary judgment final, so the trial court still had plenary power at the time it signed the judgment nunc pro tunc. Thus, the trial court still had the power to make its judgment final, regardless of the title it attached to the order doing so. *See Mathes v. Kelton*, 569 S.W.2d 876, 878 & n.3 (Tex. 1978); *Ferguson v. Naylor*, 860 S.W.2d 123, 129 (Tex. App.—Amarillo 1993, writ denied).

Nevertheless, we agree with Wasserberg that the trial court erred in making its judgment final because the court did so without addressing RES-TX's mandatory claim for attorneys' fees. *See Lehmann*, 39 S.W.3d at 204 (reasoning that judgment rendered without trial is reversible if it unequivocally states it is final but fails to address pending claim); *Young v. Hodde*, 682 S.W.2d 236, 237 (Tex. 1984) (per curiam) (holding trial court erred in rendering judgment against claim in absence of summary judgment motion seeking that relief). Statutory attorneys' fees may be discretionary or mandatory. If a statute provides that a court "may award"

9

attorneys' fees, then an award of attorneys' fees falls within the sound discretion of the trial court. *Bocquet v. Herring*, 972 S.W.2d 19, 20–21 (Tex. 1998). If a statute provides that a party "may recover," "shall be awarded," or "is entitled to" attorneys' fees, then an award of attorneys' fees is mandatory. *Id.*

Texas allows the "recovery of reasonable attorney[s'] fees in a suit for breach of contract." *Crumpton v. Stevens*, 936 S.W.2d 473, 476 (Tex. App.—Fort Worth 1996, no writ) (citing Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (West 2008)). Specifically, the statute provides that "[a] person *may recover* reasonable attorney[s'] fees . . . if the claim is for: . . . (8) an oral or written contract." Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (West 2014) (emphasis added). Because the language of the statute is "may recover" rather than "may award," attorneys' fees for a breach of contract are mandatory. *End Users, Inc. v. Sys. Supply For End Users, Inc.*, No. 14-06-00833-CV, 2007 WL 2790379, at *6 (Tex. App.—Houston [14th Dist.] Sept. 27, 2007, no pet.) (mem. op.); s*ee D.F.W. Christian Television, Inc. v. Thornton*, 933 S.W.2d 488, 490 (Tex. 1996) (per curiam) (reversing the appellate court that overturned the trial court's award of attorneys' fees under section 38.001(8) of the Texas Civil Practice and Remedies Code).

Because RES-TX's attorneys' fees claim stems from a breach of contract, an award of fees is mandatory rather than discretionary. Accordingly, we hold the trial court erred in signing a final judgment without addressing the fee claim. We therefore sustain appellant's first and second issues.

## III. The trial court did not err in granting partial summary judgment on liability and damages.

When a summary judgment is final but erroneously grants more relief than the movant requested, we do not automatically reverse the judgment in its entirety.

10

Rather, in the interest of judicial economy, we consider whether the trial court properly granted the relief that was requested. *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 298 (Tex. 2011) (per curiam); *Bandera Elec. Coop., Inc. v. Gilchrist*, 946 S.W.2d 336 (Tex. 1997) (per curiam). If so, the remedy is to affirm the summary judgment in part, reverse it in part given that only a partial summary judgment should have been granted, and remand the case to the trial court for further proceedings. *Bandera Elec. Coop.*, 946 S.W.2d at 336.

We therefore address Wasserberg's third issue, which challenges the trial court's summary judgment that he breached the guaranty agreement and owes damages to RES-TX. To prevail on summary judgment on a claim for breach of a guaranty, the plaintiff must establish (1) the existence and ownership of the guaranty; (2) the terms of the underlying contract by the holder; (3) the occurrence of the condition on which liability is based; and (4) the guarantor's failure or refusal to perform the promise. *See Wasserberg v. Flooring Servs. of Tex., LLC*, 376 S.W.3d 202, 205 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

In his third issue, Wasserberg argues that the summary judgment has both procedural and evidentiary shortcomings because RES-TX took no judgment against the primary obligor, Wasserberg's admissions were insufficient summary judgment evidence, and RES-TX failed to establish the deficiency as a matter of law. We review a trial court's decision to grant summary judgment de novo.[4] *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

First, Wasserberg complains that summary judgment could not be awarded against him because judgment was not also taken against the primary obligor,

---

[4] Wasserberg asserts only that the admissions were ineffective against him, individually, not that they should be withdrawn. Thus, we need not apply an abuse of discretion standard.

Watterhill. Generally, "a judgment may not be rendered against a party not primarily liable unless judgment is also rendered against the principal obligor." Tex. Civ. Prac. & Rem. Code Ann. § 17.001 (West 2014). A guarantor may contractually waive this requirement, however, and here Wasserberg did just that. *See Hernandez v. Bexar Cnty. Nat'l Bank of San Antonio*, 710 S.W.2d 684, 689 (Tex. App.—Corpus Christi 1986, writ ref'd n.r.e., 716 S.W.2d 938 (Tex. 1986)); *see also Irvin v. Guar. Co. of N. Am., U.S.A.*, No. 05-07-01230-CV, 2008 WL 2971806, at *5 (Tex. App.—Dallas Aug. 5, 2008, no pet.) (mem. op.) (no requirement to seek recovery from primary obligor for attorneys' fees).

For example, contract language providing that "It shall not be necessary to institute suit on any indebtedness before proceeding against the guarantor[s]" has been held a valid and enforceable waiver. *Hernandez*, 710 S.W.2d at 689. Similarly, in the *Yandell v. Tarrant State Bank*, the contract read,

> . . . Guarantor waives any right to have Customer joined with Guarantor in any suit brought against Guarantor on this guaranty, and further waives any right to require Bank to forthwith sue Customer to collect the Obligations as a prerequisite to Bank's taking action against Guarantor under this guaranty.

538 S.W.2d 684, 685 (Tex. Civ. App.—Fort Worth 1976, writ ref'd n.r.e.). The *Yandell* court held that "[i]t would be hard to think of language that would more clearly express an agreement to waive that right." *Id.* at 687.

Wasserberg's agreement contains waiver language that closely mirrors the language in those cases:

> Section 2.4 <u>The Guarantors['] Waivers</u>. The Guarantors waive any right to require the Lender to (and it shall not be necessary for the Lender, in order to enforce such payment by the Guarantors to first) (a) proceed against the Borrower or any other person liable on the

> Liabilities . . . (c) have the Borrower joined with the Guarantors in any suit arising out of this Guaranty Agreement and/or any of the Liabilities, [or] (d) enforce its rights against any other guarantor of the Liabilities . . . .

Accordingly, we hold that Wasserberg expressly waived the right to require RES-TX to secure a judgment against Watterhill.

Second, Wasserberg contends that deemed admissions 1–3 were insufficient evidence to support the summary judgment. Those requests sought admissions from Wasserberg regarding Waterhill's breach by failure to pay. Wasserberg argues that because he was not sued in his capacities as a limited partner of Waterhill and an officer of its corporate general partner, these admissions do not determine the conduct of Waterhill. Instead, Wasserberg contends, the admissions bind him only in the individual capacity in which he was sued.[5]

This distinction does not defeat the summary judgment. Although admissions are effective against a party only in the capacity in which they are served, they are still conclusively established against the party in that capacity. *See United States Fid. & Guar. Co. v. Goudeau*, 272 S.W.3d 603, 608 (Tex. 2008). Thus, these admissions can support a judgment against Wasserberg individually. Further, under admissions 4–5, Wasserberg admitted that he was a guarantor and that he breached the guaranties by failing to satisfy Waterhill's obligations. In

---

[5] Neither Wasserberg nor his counsel denied or refused to answer the admissions on that basis, which would have served as evidence only of his refusal to answer. *See Carbonit Houston, Inc. v. Exch. Bank*, 628 S.W.2d 826, 829 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). Wasserberg does not dispute that the admissions were deemed against him for lack of a response or service. *Marino v. King*, 355 S.W.3d 629, 633 (Tex. 2011) (per curiam); *In re Seizure of Gambling Proceeds*, 388 S.W.3d 874, 877 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (regarding service). Nor did he request the admissions be withdrawn on a showing of good cause and lack of undue prejudice. *In re Approximately $61,083.00*, No. 14-13-01059-CV, 2014 WL 866040, at *2 (Tex. App.—Houston [14th Dist.] Mar. 4, 2014, no pet.) (per curiam) (mem. op.).

addition to the admissions, RES-TX offered summary judgment evidence of the underlying debt, Wasserberg's guaranty and failure to comply with it, the foreclosure proceedings, and the amount of the deficiency. Together, the admissions and evidence support the trial court's grant of partial summary judgment that Wasserberg breached the guaranty agreement.

Third, with respect to the award of damages, Wasserberg contends that RES-TX failed to establish the amount of the deficiency as a matter of law. Wasserberg points out that he asserted his right to an offset against the deficiency based on the fair market value of the property under the Texas Anti-Deficiency Statute, and he argues that RES-TX offered no evidence of market value. *See generally* Tex. Prop. Code Ann. § 51.003–.005 (West 2014); *Grace Interest, LLC v. Wallis State Bank*, 431 S.W.3d 110, 114 n.1 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

We need not address whether RES-TX was obligated to offer such evidence to prove its entitlement to summary judgment, however, because Wasserberg contractually waived his anti-deficiency protections in the guaranty agreement. The Supreme Court of Texas recently confirmed that broad language waiving "any," "each," and "every" defense waives a defense under section 51.003. *Moayedi v. Interstate 35/Chisam Rd.*, L.P., 438 S.W.3d 1, 6–8 (Tex. 2014). Paragraph 7 of the *Moayedi* guaranty read:

> Guarantor further agrees that this Guaranty shall not be discharged, impaired or affected by . . . (b) *any* defense (other than the full payment of the indebtedness hereby guaranteed in accordance with the terms hereof) that the Guarantor may or might have as to Guarantor's respective undertakings, liabilities and obligations hereunder, *each* and *every* such defense being hereby waived by the undersigned Guarantor.

14

*Moayedi*, 438 S.W.3d at 3 (emphasis added); *see also Grace Interest, LLC*, 431 S.W.3d at 127–28 (enforcing more specific waiver language).

In this case, the guaranty agreement that Wasserberg signed provides in section 2.4 that "[t]he Guarantors hereby waive *all* defenses given to sureties or guarantor at law or in equity other than actual payment of the Liabilities." (emphasis added). Under *Moayedi*, this language waives Wasserberg's right to a section 51.003 offset. We therefore overrule his third issue.

## CONCLUSION

Having sustained appellant's issues one and two and overruled issue three, we affirm the portion of the trial court's judgment holding Wasserberg liable for breach of contract and awarding $3,173,645.97 in damages to RES-TX. We reverse the portion of the judgment disposing of RES-TX's claim for attorneys' fees and remand the case to the trial court for further proceedings on that claim.


/s/         J. Brett Busby
            Justice

Panel consists of Justices Boyce, Busby, and Wise.